COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-203-CR

 

 

TOM
EDWARD HORTON                                                       APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

In eleven points, Tom Edward Horton appeals his
convictions for three counts of aggravated sexual assault and three counts of
indecency with a child after trial by jury. 
We affirm.

                                          BACKGROUND








Appellant was charged with sexually abusing
complainant K.A.R., the eleven-year old daughter of his then-girlfriend,
Teri.  The abuse started around September
1996, a month after the family moved to Denton from Massachusetts.  K.A.R. made her outcry in January 1998.  Appellant was indicted in May 1998 and trial
was originally set for September 18, 2000. 
However, Appellant failed to show up for that trial.[2]  K.A.R. was twenty years old at the time of
the May 2005 trial.  We will discuss the
remaining relevant facts in our discussion of each of Appellant=s
points.








Of the six counts, counts I and III charged
aggravated sexual assault of a child under section 22.021(a)(1)(B)(v) of the
Texas Penal Code, alleged to have occurred on or about February 1 and June 1,
1997;[3]
count V also charged aggravated sexual assault of a child, but under section
22.021(a)(1)(B)(iii), alleged to have occurred on or about November 1, 1997;[4]
counts II, IV, and VI charged indecency with a child under section 21.11,
alleged to have occurred on or about February 1, June 1, and November 1,
1997.  Appellant pled not guilty to all
charges.  He was convicted by a jury and
sentenced to forty-five years=
confinement for each count of aggravated sexual assault and fifteen years=
confinement for each count of indecency with a child, to run concurrently.

                                  CONSTITUTIONAL
CLAIMS








In his first point, Appellant argues that the
convictions for counts I and III of the indictment are void, claiming that
because the dates alleged in those counts are prior to September 1, 1997, when
the amendment to section 22.021 of the Texas Penal Code under which he was
charged became effective, the counts= charged
conduct did not constitute a crime at the time it was alleged to have occurred.[5]  Therefore, he asserts, because the alleged
conduct had not been criminalized, the trial court had no personal jurisdiction
over Appellant, or subject matter jurisdiction with regard to counts I and III.  In his fourth and fifth points, he asserts
that his convictions under counts I and III violate his due process rights
against convictions for conduct that is not criminalized, under the Fifth
Amendment of the United States Constitution and under article I, section 10 of
the Texas Constitution.

The State counters that these convictions are not
void for lack of jurisdiction and do not violate Appellant=s due
process rights because the Aon or
about@ dates
alleged encompass a time period after the effective date of the statute.

Appellant=s Ex
Post Facto Claim








Essentially, Appellant raises an ex post facto
issue.  An ex post facto
complaint is a complaint that the law does not permit prosecution or conviction
for behavior which did not constitute a criminal offense when it happened.[6]  See Ieppert v. State, 908 S.W.2d 217,
219 (Tex. Crim. App. 1995).  We review
this type of issue de novo because it concerns a question of law.  See, e.g., State v. Moff, 154 S.W.3d 599,
601 (Tex. Crim. App. 2004) (holding that an indictment=s
sufficiency is a question of law to be reviewed de novo).[7]








The Aon or
about@
language of an indictment allows the State to prove a date other than the one
alleged in the indictment as long as the date is anterior to the indictment=s
presentment and within the limitations period. 
Sledge v. State, 953 S.W.2d 253, 255‑56 (Tex. Crim. App.
1997) (citing Mitchell v. State, 330 S.W.2d 459, 462 (Tex. Crim. App.
1959)); see also Tex. Code Crim.
Proc. Ann. art. 21.02, '6
(Vernon 2006); Scoggan v. State, 799 S.W.2d 679, 680 n.3 (Tex. Crim.
App. 1990) (noting that the State is not bound by the date alleged in the
indictment and may prove that an offense was committed before, on, or after
date alleged, so long as the date proved is a date anterior to presentment of
indictment and not barred by limitation). 
The State is not required to prove the exact date alleged.  See Garcia v. State, 981 S.W.2d 683,
685‑86 (Tex. Crim. App. 1998). 
Instead, it is entitled to present evidence of any of the specific acts
of sexual misconduct involving appellant and the named victim that occurred
within the limitations period.  Ferrell
v. State, 968 S.W.2d 471, 473 (Tex. App.CFort
Worth 1998, pet ref=d).








Appellant cites Chafin v. State as the
basis for his ex post facto claim. 
95 S.W.3d 549, 555 (Tex. App.CAustin
2002, no pet.).  However, in Chafin,
an indecency with a child case with similar facts, there was specific,
undisputed evidence that the not-yet-criminalized conduct occurred in
1996.  Id. at 554.  In contrast, K.A.R. indicated that although
she could not remember specific dates, from September 1996 to her outcry in
January 1998, Appellant would sexually abuse her at least once or twice a
month, if not more frequently.  K.A.R.
testified that the behavior in counts I and III occurred approximately twenty
times.  Because the behavior alleged in
counts I and III was criminalized on September 1, 1997, it constituted an
offense for at least four of the months in which the sexual abuse occurred.[8]

Appellant could have filed a motion for the State
to elect specific instances of misconduct, but he did not.  See Yzaguirre v. State, 957 S.W.2d 38,
40‑41 (Tex. Crim. App. 1997) (Meyers, J. concurring); Ferrell, 968
S.W.2d at 473 n.1.  Because he did not, and
because Aon or
about@ does
not limit the State to the dates alleged, but rather, allows the State to
present evidence from the Aon or
about@ date to
the presentment of the indictment, Appellant does not have a true ex post
facto claim.  We overrule Appellant=s first
point.

Appellant=s Due
Process Claims

We will only address whether Appellant=s rights
were violated under the U.S. Constitution because Appellant does not
distinguish those rights from his rights under the Texas Constitution.  See Dewberry v. State, 4 S.W.3d 735,
743‑44 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000)
(addressing only U.S. Constitution because appellant failed to distinguish
rights with Texas Constitution); accord Hale v. State, 139 S.W.3d 418,
421 (Tex. App.CFort Worth 2004, no pet.).








The Fifth Amendment to the U.S. Constitution
provides that no person shall Abe
deprived of life, liberty, or property, without due process of law.@  U.S.
Const. amend. V.  When combined
with the Ex Post Facto clause of article I, section 10 of the U.S.
Constitution, the Due Process clause basically provides Athat
persons have, at the time they engage in conduct, a right to fair warning of
what conduct will give rise to which criminal penalties,@ such
that legislative or judicial action may not operate retroactively if it has the
effect of depriving persons of this fair warning.  See Proctor v. State, 967 S.W.2d 840,
845 (Tex. Crim. App. 1998) (citing Marks v. United States, 430 U.S. 188,
191‑92, 97 S. Ct. 990, 992-93 (1977)). 
As discussed above, Appellant was not deprived of fair warning, because
even though section 22.021(a)(1)(B)(v) became effective on September 1, 1997,
the sexual abuse did not cease until K.A.R.=s outcry
in January 1998.  Appellant had notice
for at least four months.  We overrule
Appellant=s fourth and fifth points.

                              SUFFICIENCY
OF THE EVIDENCE








In points two, three, six, and seven, Appellant
challenges the legal and factual sufficiency of the evidence used to convict
him of all of the counts.  In points two
and three, he claims that there was no proof of any specific incidents or any
specific dates when the offenses alleged in counts I, III, and V occurred.  In points six and seven, he makes the same
challenges regarding counts II, IV, and VI.

Standard Of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).  The
elements of an offense consist of 
forbidden conduct with a required culpability.  Tex.
Penal Code Ann. ' 1.07(a)(22)(A)‑(D)
(Vernon Supp. 2006); see also Fuller v. State, 73 S.W.3d 250, 252‑53
(Tex. Crim. App. 2002) (discussing substantive elements of criminal offenses). 








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, No. PD‑469‑05, 2006 WL 2956272, at *8 (Tex. Crim. App.
Oct. 18, 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s determination is manifestly
unjust.  Watson, 2006 WL 2956272,
at *8, 10; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
2006 WL 2956272, at *10.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the fact‑finder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.

Counts I, III, V

To convict Appellant of counts I and III, the
State had the burden to prove that on two occasions, after September 1, 1997,
Appellant intentionally and knowingly caused K.A.R.=s mouth
to contact Appellant=s sexual organ.  To convict Appellant of count V, the State
had the burden to prove that at least once between September 1996 and January
1998, Appellant intentionally and knowingly caused his mouth to contact K.A.R.=s female
sexual organ.  K.A.R. described all this
conduct during her testimony, as discussed below.








Appellant cites this court=s
opinion in Klein v. State to support his argument that there was legally
insufficient evidence to convict him of counts I, III, and V.  191 S.W.3d 766 (Tex. App.CFort
Worth 2006, pet. granted).  Klein
is distinguishable because in that case, we observed that other than testimony
by a police officer that the victim had told him when she had last been
assaulted, Athere was no testimony proving a
specific occurrence of an incident provided by any witness.@  Id. at 775.  We stated that the general assertions made at
trial failed to describe separate and distinct incidents.[9]  Id. 
The State is bound to prove the occurrences of specific transactions,
but not to prove specific dates.  See
Scoggan, 799 S.W.2d at 680 n.3; Wilson v. State, 730 S.W.2d 438, 443
(Tex. App.CFort Worth 1987, pet. ref=d), disapproved
on other grounds by Curry v. State, 861 S.W.2d 479, 482 n.2 (Tex. App.CFort
Worth 1993, pet. ref=d).

K.A.R. testified that although she could not
remember specific dates, the sexual abuse would happen sometimes once or twice
a week and once or twice a month at other times.  She testified that, approximately twenty
times each, Appellant performed oral sex on her, had her masturbate him, made
her give him oral sex, and put her hands on his penis.  She said that after the sexual abuse,
Appellant would tell her that he loved her, hug her, and say he would never do
it again.  She described the abuse as
normally beginning with tickling, and then Appellant would undress her, and 








then he=d make me masturbate him
and then give him oral sex.  And then if
he ejaculated, then he would go into the bathroom and wash his hands, get it
off his stomach.  And if he wasn=t done, then sometimes he=d come back and he=d play with my breasts
and put his mouth on my vagina.

 

When asked whether Appellant forced her, she replied, AIf putting
your head down and not letting you get away is force, then yes, he did.@  When asked whether she made her outcry to
hurt her mother, Teri, or because she was tired of being under Teri and
Appellant=s authority, K.A.R. responded, ANo, I
was tired of being under his hands.@[10]

K.A.R. described the conduct in counts I, III,
and V as occurring in Appellant=s
bedroom and in her bedroom when her mother was at work.  Testimony by Teri and by DiAnna, who had been
a neighbor and friend of the family at the time of the abuse, about Appellant=s
admissions to them about the sexual abuse corroborates K.A.R.=s
testimony.








DiAnna testified that in January 1998, Appellant
came to her house to tell Ahis side
of the story@ and told her that he was sorry
he did it, and he had been doing it for so long that he did not know how to
stop.  Teri testified that Appellant
specifically admitted to Atouching [K.A.R.], kissing her,
oral sex,@ and admitted to having K.A.R.
masturbate him.  When K.A.R. made her
outcry to Teri, Teri asked K.A.R. to describe Appellant=s
penis.  From the description K.A.R. gave,
that it was Acrooked,@ or
curved when erect,  Teri said that she
knew K.A.R. was telling the truth. 
Appellant=s wife, Kelly, described
Appellant=s penis as having a Acurvature
abnormality, birth defect.@

Teri testified that when she told Appellant what
K.A.R. said, Ahe told me that he knew at some
point or another that she was going to tell me, and that heCevery
day when he came home from work, he was afraid that I was going to be waiting
at the door with a baseball bat.@  She also testified that when Appellant moved
back to Massachusetts, he continued to call her and that he wrote her letters
for approximately two months following the confrontation, in which he
specifically admitted the allegations. 
These letters were not introduced at trial.

Appellant testified on his own behalf, denying
the allegations and that he had ever confessed to sexually abusing K.A.R.  He testified that at the time of K.A.R.=s outcry
to Teri, K.A.R. was mad at both of them and had threatened to say that
Appellant was touching her.  He testified
that K.A.R. lied, that the prosecutors were out to get him, and that he never
confessed to what Teri and DiAnna testified.








The remaining elements for all three counts, that
K.A.R. be younger than fourteen years of age and not Appellant=s spouse
at the time, were addressed early in the testimony.  K.A.R. testified that she was twelve when she
made her outcry statement to her mother, and answered Ano,@ when
asked if she had ever been married to Appellant or been his spouse.  Viewing this evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have
found the essential elements of these three counts beyond a reasonable
doubt.  Therefore, there was legally
sufficient evidence to convict Appellant of counts I, III, and V.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Hampton, 165 S.W.3d at 693. 

Further, viewing this evidence in a neutral light
and giving due deference to the jury=s
determination, we conclude that the evidence supporting the conviction is not
so weak that the jury=s determination is clearly wrong
and manifestly unjust, and therefore it was factually sufficient to support
Appellant=s convictions on counts I, III,
and V.  Watson, 2006 WL 2956272,
at *8, 10; Johnson, 23 S.W.3d at 8-9, 11.  We overrule Appellant=s second
and third points.

Counts II, IV, VI

Appellant contends that the evidence in support
of counts II, IV, and VI could at best support only one of those incidents, but
that the evidence is legally and factually insufficient on all of those counts.








To convict Appellant of indecency with a child in
counts II, IV, and VI, the State had the burden to prove that on three
occasions, between September 1996 and January 1998, Appellant engaged in sexual
contact with K.A.R. with the intent to arouse and gratify his sexual
desire.  The specific sexual contact
alleged for all three counts was that Appellant caused K.A.R. to touch his
genitals.

K.A.R. testified that this conduct occurred Ajust
about every time, so about twenty times.@  She described one particular incident in
which Appellant made her masturbate him on the bed in his bedroom.  She testified that he called this the Avolcano.@  She also testified that in addition to doing
this in his bedroom, he also had her masturbate him in her bedroom.








The remaining elements for all three counts, that
K.A.R. be younger than seventeen years of age and not Appellant=s spouse
at the time, were established in K.A.R.=s
testimony, as addressed above.  Viewing
this evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that
indecency with a child occurred on three separate occasions and therefore,
there was legally sufficient evidence to convict Appellant of counts II, IV,
and VI.  Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Hampton, 165 S.W.3d at 693.  Further, viewing all the evidence in a
neutral light, we conclude that the evidence presented was also factually
sufficient to convict Appellant of all three counts of indecency with a
child.  The jury chose to believe K.A.R.=s
testimony over Appellant=s, and the evidence is not so
weak that their determination was clearly wrong or manifestly unjust.  See Watson, 2006 WL 2956272, at *8,
10; Johnson, 23 S.W.3d at 11.  We
overrule Appellant=s sixth and seventh points.

                                  ADMISSION
OF EVIDENCE

In his eighth, tenth, and eleventh points,
Appellant complains that the trial court abused its discretion in the admission
of evidence.

Standard Of Review








We review a trial court=s
decision to admit or exclude evidence under an abuse of discretion
standard.  Green v. State, 934
S.W.2d 92, 101‑02 (Tex. Crim. App. 1996); Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  If the court=s
decision falls outside the Azone of
reasonable disagreement,@ it has abused its
discretion.  Montgomery, 810
S.W.2d at 391.  As long as the trial
court=s ruling
falls within the zone of reasonable disagreement, we will affirm its
decision.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
The trial court=s decision must be reasonable in
view of all the relevant facts.  Santellan
v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an
appellate court would in a similar circumstance does not demonstrate that an
abuse of discretion has occurred.  Manning
v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Admissibility Of Evidence

Evidence is relevant when it has a tendency to
make the existence of any fact more probable or less probable than it would
have been without the evidence. Tex. R.
Evid. 401.  A trial court is
afforded the discretion to decide the relevance and admissibility of evidence,
and unless the court has abused that discretion by ruling on relevance
arbitrarily or capriciously, the ruling will not be disturbed on appeal.  Moreno v. State, 858 S.W.2d 453, 463
(Tex. Crim. App.), cert. denied, 510 U.S. 966 (1993).

Flight

In point eight, Appellant claims the trial court
abused its discretion by allowing the admission of testimony regarding
Appellant=s alleged flight from Texas in
1998 as evidence indicating guilt, arguing that the prejudicial effect of this
evidence outweighed its probative value. 
The State responds that it was not an abuse of discretion to admit
undisputed evidence of Appellant=s
departure from Texas soon after K.A.R.=s
outcry.








Evidence of an accused person=s
conduct after the commission of a crime that is indicative of a Aconsciousness
of guilt@ may be
admitted as a circumstance tending to prove that the person committed the act
with which he is charged.  See Hyde v.
State, 846 S.W.2d 503, 505 (Tex. App.CCorpus
Christi 1993, pet. ref=d).  Consciousness of guilt is perhaps one of the
strongest kinds of evidence of guilt.  Id.;
see also Torres v. State, 794 S.W.2d 596, 598 (Tex. App.CAustin
1990, no pet.).  Evidence of flight is
admissible as a circumstance from which an inference of guilt may be drawn as
long as it is first shown that it has some relevance to the offense under
prosecution.  Burks v. State, 876
S.W.2d 877, 903 (Tex. Crim. App. 1994), cert. denied, 513 U.S. 1114
(1995).  Appellant left Texas within
three days of K.A.R.=s outcry.  Testimony about when and how Appellant left
Texas tended to show that it was more likely that he left in response to K.A.R.=s outcry
than for some other reason; his departure also made the existence of some consciousness
of guilt more probable.  Therefore, this
evidence was relevant.  Tex. R. Evid. 401.








Rule 403 allows for the exclusion of otherwise
relevant evidence when its probative value is, among other things,
substantially outweighed by the danger of unfair prejudice.  Shuffield v. State, 189 S.W.3d 782,
787 (Tex. Crim. App.), cert. denied, 2006 WL 2462726 (U.S. Nov. 27,
2006) (No. 06-6055).  The trial court is
in a superior position to gauge the impact of relevant evidence in evaluating its
determination under rule 403.  Mozon
v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).  Rule 403 favors the admission of relevant
evidence and carries a presumption that relevant evidence will be more
probative than prejudicial.  Shuffield,
189 S.W.3d at 787.  A rule 403 analysis
should include, but is not limited to, the following factors: how probative the
evidence is; the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way; the time the proponent needs to
develop the evidence; and the proponent=s need
for the evidence.  Id.

Before trial, the court heard arguments on the
admissibility of this evidence and stated that it would Aallow
the State to go into it,@ but would also allow Appellant
to impeach it.  Teri testified that the
day after the outcry, Appellant took a duffle bag full of clothes with him but
left behind his work-related tools, birth certificate, and clothing that did
not fit in the duffle bag.  She testified
that she went for a ride with him later that day and drove him to the airport
for his flight to Massachusetts on the following morning.  Teri testified that Appellant apologized for
what he had done to K.A.R. and wanted Teri to forgive him.  She testified that he also tried to convince
her that K.A.R. had initiated all of the sexual behavior.








When asked why he did not pack more than a duffle
bag, Appellant stated, AI didn=t own
anything, you know what I mean.  Besides
that, I had all intentions of coming back and doing everything, fixing
everything, making everything all right.@  He admitted to leaving Texas three days after
the accusation, and said Ano,@ when
asked whether he thought it would have been a good idea to stick around for any
investigation after the outcry.

This evidence is probative of Appellant=s state
of mind after the outcry, and it had little potential to impress the jury in
some irrational, indelible way.  Although
Appellant testified that he intended to return, he did not, and he gave no
other reason for leaving.  He
acknowledged that he left his maintenance job at a private school when he went
to Massachusetts because he knew that he would not be able to work there with
sexual abuse allegations against him. 
Thus, the trial court did not abuse its discretion by concluding that
the probative value of Teri=s
testimony about Appellant=s departure was not
substantially outweighed by the danger of unfair prejudice.  See Shuffield, 189 S.W.3d at
787-88.  Appellant=s eighth
point is overruled.

State=s
Exhibit 1

In points ten and eleven, Appellant complains
that it was error for the trial court to admit State=s
Exhibit 1 over his objection because the exhibit was not relevant and not
properly authenticated.  State=s
Exhibit 1 consisted of three letters and an attachment, file marked June 26,
2000.

Preservation Of Error








At the time the State offered Exhibit 1,
Appellant made no objection based on relevance. 
Appellant only objected based on Aunfairness@ and
lack of authentication.  Therefore, Appellant
has forfeited this complaint for failure to comply with rule 33.1(a).  See Tex.
R. App. P. 33.1(a); Mendez, 138 S.W.3d at 341-42.  Because Appellant failed to preserve his
objection, we overrule Appellant=s tenth
point.

Authentication

Texas Rule of Evidence 901(a) provides that A[t]he
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.@  Tex.
R. Evid. 901(a); Massimo v. State, 144 S.W.3d 210, 215 (Tex. App.CFort
Worth 2004, no pet.).  Examples of
authentication or identification meeting rule 901>s
requirements include testimony of a witness with knowledge that a matter is
what it is claimed to be and distinctive characteristics such as A[a]ppearance,
contents, substance, internal patterns, or other distinctive characteristics,
taken in conjunction with circumstances.@  Tex.
R. Evid. 901(b)(1), (4).

Appellant testified that he recalled writing a
letter in 2000 to the court, in which he asked for information.  He stated, AI recall
sending one letter to the court, asking the court, it=s been
six months, please help me, what=s going
on in here, when am I going to court.@








The first letter in the exhibit, signed ATom. E.
Horton,@ was
dated June 6, 2000, was addressed to the court, and referenced Appellant=s trial
court cause number, AF-98-0597-B.@[11]

In the sixth paragraph of Letter 1, Appellant
states, APlease
find enclosed copies of two letters which were sent to Mr. Perritt on April 14,
2000, and May 26, 2000.  These, along
with attempt to reach him by phone, have gone unanswered.@  Letter 2 is dated May 26, 2000.  Letter 3 is dated April 14, 2000.  Both letters were addressed to Ricky Perritt,
Appellant=s second attorney on this
case.  On his review of the letters in
Exhibit 1, Appellant stated Athat
second one is not mine.  The first one is
mine,@ and Athe
third one, I=m not sure of.@  Testifying as a witness with knowledge that a
matter is what it is claimed to be, Appellant sufficiently authenticated Letter
1.  See Tex. R. Evid. 901(a), (b)(1).








A review of the characteristic evidence and
circumstances concerning Letters 2 and 3 yields the following: (1) the dates on
these two letters and their purpose, to reach Perritt and prepare Appellant=s
defense, are referenced in Letter 1; (2) Appellant testified that Ricky Perritt
was his former attorney; (3) Appellant identified the return address in Letters
2 and 3 as his address; (4) in the court=s file
was the original envelope from the Denton County jail, labeled inmate mail,
addressed to the trial judge, and with Appellant=s return
address; (5) Letter 2 references an attachment listing names of people Appellant
testified that he knew; (6) Letters 2 and 3 do not have a handwritten
signature, but are concluded with a typewritten ATom E.
Horton.@

The trial judge concluded that Appellant=s
testimony that he did not write the unsigned Letters 2 and 3 went to the
evidence=s
weight, not its admissibility, and decided to admit the exhibit and Alet the
jury decide what to do with it.@  Based on the foregoing and upon review of the
requirements of Rule 901 of the Texas Rules of Evidence, we cannot say that the
trial court=s decision to admit State=s
Exhibit 1 over Appellant=s lack‑of‑authentication
objection was arbitrary or unreasonable. 
See Massimo, 144 S.W.3d at 216. 
Therefore, we hold that the trial court=s
decision did not constitute an abuse of discretion and we overrule Appellant=s
eleventh point.

                                    MOTION
FOR MISTRIAL

In his ninth point, Appellant asserts that the
trial court erroneously denied his twice‑requested motion for mistrial
when testimony referring to previous extraneous acts between K.A.R. and
Appellant was improperly put before the jury.








Before trial, the court granted Appellant=s motion
in limine to exclude testimony about a previous trial involving Appellant in
Massachusetts on a similar accusation and any acts alleged to have occurred
between K.A.R. and Appellant prior to the move to Texas.  The extraneous acts at issue were mentioned
in K.A.R.=s testimony that the abuse began
when she was eight and Teri=s
testimony that Appellant tried to convince her Athat at
eight years old [K.A.R.] knew what she was doingC.@

Standard Of Review

Mistrials are an extreme remedy for prejudicial
events occurring during the trial process. 
Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996); Jackson
v. State, 50 S.W.3d 579, 588 (Tex. App.CFort
Worth 2001, pet. ref=d).  The declaration of a mistrial ought to be an
exceedingly uncommon remedy for residual prejudice remaining after objections
are sustained and curative instructions are given.  Bauder, 921 S.W.2d at 698.  For this reason, judicial admonishments to
the jury are presumed effective.  Id.








When the trial court sustains an objection and
instructs the jury to disregard but denies a motion for mistrial, the issue is
whether the trial court abused its discretion by denying the mistrial.  Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004); Primes v. State, 154 S.W.3d 813, 814 (Tex. App.CFort
Worth 2004, no pet.).  Its resolution
depends on whether the trial court=s
instruction to disregard cured any prejudicial effect.  West v. State, 121 S.W.3d 95, 107
(Tex. App.CFort Worth 2003, pet. ref=d).  Determination of whether a given error
necessitates a mistrial must be made by examining the particular facts of the
case.  Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000).

Preservation Of Error








After Appellant objected to Teri=s
statement, any further discussion with the court was made off the record.  To preserve a complaint for appellate review,
the record must reflect that the complaint was made to the trial court and
either that the trial court ruled on it or that the appellant objected to its
refusal to do so.  Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a)(2); Gutierrez
v. State, 36 S.W.3d 509, 510‑11 (Tex. Crim. App. 2001); Darty v.
State, 709 S.W.2d 652, 655 (Tex. Crim. App. 1986).  While a trial court=s ruling
may be implied under rule 33.1(a)(2), we do not find any indication of whether
Appellant moved for a mistrial in response to the court overruling his
objection.  See Tex. R. App. P. 33.1(a)(2).  Therefore, because his complaint about Teri=s
comment was not properly preserved, we will not address it further.[12]  See id.

Instruction To Disregard

Ordinarily, a prompt instruction to disregard
will cure error associated with an improper question and answer, even one
regarding extraneous offenses. Ovalle v. State, 13 S.W.3d 774, 783 (Tex.
Crim. App. 2000).  Error in admitting
improper testimony may be corrected by a withdrawal and an instruction to
disregard unless it appears the evidence is clearly calculated to inflame the
minds of the jury and is of such character as to suggest the impossibility of
withdrawing the impression produced on their minds.  Barnes v. State, 876 S.W.2d 316,
326-27 (Tex. Crim. App. 1994); Waldo v. State, 746 S.W.2d 750, 752 (Tex.
Crim. App. 1988).

Here, the question asked by the State to K.A.R.
was not improper:

Q:     Did
something bad happen between you and [Appellant] after you moved to Denton?

 








A:     Yes.

Q:     And when did it start?

A:     It started when I was eight.

Q:     When did it start in relation to you moving
to Denton?

A:     Probably within like a month of living
there.

At this point, Appellant=s
counsel requested permission to approach the bench and moved for a
mistrial.  The trial judge denied
Appellant=s motion, but gave the jury an
instruction to disregard the answer and to consider it for no purpose.  Because the State clarified K.A.R.=s
statement about her age immediately, returning the focus to the abuse in Texas,
we cannot conclude that her statement about her age was Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile.@  See Hawkins, 135 S.W.3d at 77.  Therefore, we conclude that the court=s
instruction cured the error.  See Ladd,
3 S.W.3d at 567; Bauder, 921 S.W.2d at 698.  Accordingly, we hold that the trial court did
not abuse its discretion by denying Appellant=s motion
for mistrial.  See Hawkins, 135
S.W.3d at 77.  We overrule Appellant=s ninth
point.

                                           CONCLUSION

Having overruled all of Appellant=s
points, we affirm the trial court=s
judgment.








DIXON
W. HOLMAN

JUSTICE

 

PANEL A:  LIVINGSTON, HOLMAN,
and WALKER, JJ.

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  December 7, 2006











[1]See Tex. R. App. P. 47.4.





[2]At least one notice about the 2000 trial had been sent
to Appellant at a Massachusetts address, with his attorney receiving a
copy.  Appellant=s
current spouse, Kelly, testified that Appellant told her about the sexual abuse
charges pending in Texas and that they knew about his 2000 court date, but that
his attorney told them Appellant did not have to attend because he was in
Massachusetts.  Appellant testified that
he never knew he Awas going to trial up until right now.@





[3]Counts I and III differed only by date, stating that
Appellant Aon or about the [date] and anterior to the presentment
of this Indictment, . . . did then and there intentionally and knowingly cause
the mouth of said [K.A.R.], a child younger than 14 years of age who was not
the spouse of said [Appellant], to contact the sexual organ of [Appellant].@





[4]Count V stated that Appellant Aon or
about the 1st day of November, 1997, and anterior to the presentment of this
indictment, . . . did then and there intentionally and knowingly cause
[Appellant=s] mouth to contact the female sexual organ of
[K.A.R.], a child younger than 14 years of age who was not the spouse of said
[Appellant].@





[5]Section 22.021(a)(1)(B)(v) states, Aa person
commits an offense if the person intentionally or knowingly causes the mouth of
a child to contact the anus or sexual organ of another person, including the
actor.@  Tex. Pen. Code Ann. '
22.021(a)(1)(B)(v) (Vernon Supp. 2006). 
Subsection (v) became effective September 1, 1997.  See Act of May 28, 1997, 75th Leg.,
R.S., ch. 1286, ' 2, 1997 Tex. Gen. Laws 4911, 4912.





[6]An ex post facto law is an enactment that
punishes as a crime an act previously committed, which was innocent when
done.  Ex parte Scales, 853 S.W.2d
586, 588 (Tex. Crim. App. 1993).





[7]Appellant did not raise this issue at trial.  Generally, constitutional errors are
forfeited by failure to object at trial. 
Curry v. State, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App.
1995); accord Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App.
2004).  But Athe
constitutional prohibition against ex post facto legislation . . . is a
categorical prohibition directed by the people to their government@ which
cannot be waived, individually or collectively. 
Ieppert, 908 S.W.2d at 220. 
Because the ex post facto clause is a fundamental systemic
requirement that may not be waived by failure to object at trial, Appellant may
raise it for the first time on appeal.  Saldano
v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002); Ieppert, 908
S.W.2d at 218, 220.





[8]That is, from September 1, 1997 to the outcry in
January 1998.  The indictment was
presented on May 28, 1998.





[9]In Klein, the testimony indicated how long the
alleged abuse had occurred, that the child had reported that the alleged abuse
occurred more than once, that the abuse happened Amost nights@ when the child=s mother was at dance class, which she attended for
six to eight weeks when the child was a student at McCoy Elementary, and when
the child transferred to that school.  Id.





[10]K.A.R. testified that the trigger for telling her
mother about the sexual abuse was being punished, but also A[b]ecause
I couldn=t take it anymore and because they were going to get
married and I didn=t want them to get married before I told her, and I
was sick of feeling dirty and I wanted it to stop.@





[11]For clarity, we will refer to ALetter 1@ for the
letter dated June 6, 2000, ALetter 2@ for the letter dated May 26, 2000, and ALetter 3@ for the
letter dated April 14, 2000.





[12]Appellant argues that Awhile the specifics of the objection were not
recorded, it is obvious from a later objection after the conclusion of [Teri=s]
testimony and motion for mistrial what the specifics of that objection must
have been.@  We decline
Appellant=s invitation to engage in speculation.  The motion for mistrial made at the
conclusion of Teri=s testimony was based on Appellant=s
objection to the State=s reference to Adefense=s motion in limine@ in front of the jury, not to Teri=s
testimony.  The trial court denied that
request for mistrial.