COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-203-CR

TOM EDWARD HORTON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In eleven points, Tom Edward Horton appeals his convictions for three counts of aggravated sexual assault and three counts of indecency with a child after trial by jury.  We affirm.

BACKGROUND

Appellant was charged with sexually abusing complainant K.A.R., the eleven-year old daughter of his then-girlfriend, Teri.  The abuse started around September 1996, a month after the family moved to Denton from Massachusetts.  K.A.R. made her outcry in January 1998.  Appellant was indicted in May 1998 and trial was originally set for September 18, 2000. However, Appellant failed to show up for that trial.
(footnote: 2)  K.A.R. was twenty years old at the time of the May 2005 trial.  We will discuss the remaining relevant facts in our discussion of each of Appellant’s points.

Of the six counts, counts I and III charged aggravated sexual assault of a child under section 22.021(a)(1)(B)(v) of the Texas Penal Code, alleged to have occurred on or about February 1 and June 1, 1997;
(footnote: 3) count V also charged aggravated sexual assault of a child, but under section 22.021(a)(1)(B)(iii), alleged to have occurred on or about November 1, 1997;
(footnote: 4) counts II, IV, and VI charged indecency with a child under section 21.11, alleged to have occurred on or about February 1, June 1, and November 1, 1997.  Appellant pled not guilty to all charges.  He was convicted by a jury and sentenced to forty-five years’ confinement for each count of aggravated sexual assault and fifteen years’ confinement for each count of indecency with a child, to run concurrently.

CONSTITUTIONAL CLAIMS

In his first point, Appellant argues that the convictions for counts I and III of the indictment are void, claiming that because the dates alleged in those counts are prior to September 1, 1997, when the amendment to section 22.021 of the Texas Penal Code under which he was charged became effective, the counts’ charged conduct did not constitute a crime at the time it was alleged to have occurred.
(footnote: 5)  Therefore, he asserts, because the alleged conduct had not been criminalized, the trial court had no personal jurisdiction over Appellant, or subject matter jurisdiction with regard to counts I and III.  In his fourth and fifth points, he asserts that his convictions under counts I and III violate his due process rights against convictions for conduct that is not criminalized, under the Fifth Amendment of the United States Constitution and under article I, section 10 of the Texas Constitution.

The State counters that these convictions are not void for lack of jurisdiction and do not violate Appellant’s due process rights because the “on or about” dates alleged encompass a time period after the effective date of the statute.

Appellant’s Ex Post Facto Claim

Essentially, Appellant raises an 
ex post facto 
issue.  An 
ex post facto 
complaint is a complaint that the law does not permit prosecution or conviction for behavior which did not constitute a criminal offense when it happened.
(footnote: 6)  
See Ieppert v. State
, 908 S.W.2d 217, 219 (Tex. Crim. App. 1995).  We review this type of issue de novo because it concerns a question of law. 
 See, e.g., State v. Moff
, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (holding that an indictment’s sufficiency is a question of law to be reviewed de novo).
(footnote: 7) The “on or about” language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the indictment’s presentment and within the limitations period.  
Sledge v. State
, 953 S.W.2d 253, 255-56 (Tex. Crim. App. 1997) (citing 
Mitchell v. State
, 330 S.W.2d 459, 462 (Tex. Crim. App. 1959));
 
see also 
Tex. Code Crim. Proc. Ann. 
art. 21.02, §6 (Vernon 2006); 
Scoggan v. State
, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990) (noting that the State is not bound by the date alleged in the indictment and may prove that an offense was committed before, on, or after date alleged, so long as the date proved is a date anterior to presentment of indictment and not barred by limitation). 
 The State is not required to prove the exact date alleged.  
See Garcia v. State
, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998).  Instead, it is entitled to present evidence of any of the specific acts of sexual misconduct involving appellant and the named victim that occurred within the limitations period.  
Ferrell v. State
, 968 S.W.2d 471, 473 (Tex. App.—Fort Worth 1998, pet ref’d).

Appellant cites 
Chafin v. State 
as the basis for his 
ex post facto 
claim.  95 S.W.3d 549, 555 (Tex. App.—Austin 2002, no pet.).  However, in 
Chafin
, an indecency with a child case with similar facts, there was specific, undisputed evidence that the not-yet-criminalized conduct occurred in 1996.  
Id
. at 554.  In contrast, K.A.R. indicated that although she could not remember specific dates, from September 1996 to her outcry in January 1998, Appellant would sexually abuse her at least once or twice a month, if not more frequently.  K.A.R. testified that the behavior in counts I and III occurred approximately twenty times.  Because the behavior alleged in counts I and III was criminalized on September 1, 1997, it constituted an offense for at least four of the months in which the sexual abuse occurred.
(footnote: 8)
 Appellant could have filed a motion for the State to elect specific instances of misconduct, but he did not.  
See Yzaguirre v. State
, 957 S.W.2d 38, 40-41 (Tex. Crim. App. 1997) (Meyers, J. concurring); 
Ferrell
, 968 S.W.2d at 473 n.1.  Because he did not, and because “on or about” does not limit the State to the dates alleged, but rather, allows the State to present evidence from the “on or about” date to the presentment of the indictment, Appellant does not have a true 
ex post facto 
claim.  We overrule Appellant’s first point.

Appellant’s Due Process Claims

We will only address whether Appellant’s rights were violated under the U.S. Constitution because Appellant does not distinguish those rights from his rights under the Texas Constitution.  
See Dewberry v. State
, 4 S.W.3d 735, 743-44 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (addressing only U.S. Constitution because appellant failed to distinguish rights with Texas Constitution); 
accord Hale v. State
, 139 S.W.3d 418, 421 (Tex. App.—Fort Worth 2004, no pet.).

The Fifth Amendment to the U.S. Constitution provides that no person shall “be deprived of life, liberty, or property, without due process of law.”  
U.S. Const
. amend. V
.  When combined with the Ex Post Facto clause of article I, section 10 of the U.S. Constitution, the Due Process clause basically provides “that persons have, at the time they engage in conduct, a right to fair warning of what conduct will give rise to which criminal penalties,” such that legislative or judicial action may not operate retroactively if it has the effect of depriving persons of this fair warning.  
See Proctor v. State
, 967 S.W.2d 840, 845 (Tex. Crim. App. 1998) (citing 
Marks v. United States
, 430 U.S. 188, 191-92, 97 S. Ct. 990, 992-93 (1977)).  As discussed above, Appellant was not deprived of fair warning, because even though section 22.021(a)(1)(B)(v) became effective on September 1, 1997, the sexual abuse did not cease until K.A.R.’s outcry in January 1998.  Appellant had notice for at least four months.  We overrule Appellant’s fourth and fifth points.

SUFFICIENCY OF THE EVIDENCE

In points two, three, six, and seven, Appellant challenges the legal and factual sufficiency of the evidence used to convict him of all of the counts.  In points two and three, he claims that there was no proof of any specific incidents or any specific dates when the offenses alleged in counts I, III, and V occurred.  In points six and seven, he makes the same challenges regarding counts II, IV, and VI.

Standard Of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt
.  Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  The elements of an offense consist of  forbidden conduct with a required culpability.  
Tex. Penal Code Ann. 
§ 1.07(a)(22)(A)-(D) (Vernon Supp. 2006); 
see also Fuller v. State
, 73 S.W.3d 250, 252-53 (Tex. Crim. App. 2002) (discussing substantive elements of criminal offenses). 

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, No. PD-469-05, 2006 WL 2956272, at *8 (Tex. Crim. App. Oct. 18, 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 2006 WL 2956272, at *8, 10; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 2006 WL 2956272, at *10.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”  
Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.” 
 Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

Counts I, III, V

To convict Appellant of counts I and III, the State had the burden to prove that on two occasions, after September 1, 1997, Appellant intentionally and knowingly caused K.A.R.’s mouth to contact Appellant’s sexual organ.  
To convict Appellant of count V, the State had the burden to prove that at least once between September 1996 and January 1998, Appellant intentionally and knowingly caused his mouth to contact K.A.R.’s female sexual organ.  K.A.R. described all this conduct during her testimony, as discussed below.

Appellant cites this court’s opinion in 
Klein v. State 
to support his argument that there was legally insufficient evidence to convict him of counts I, III, and V.  191 S.W.3d 766 (Tex. App.—Fort Worth 2006, pet. granted).  
Klein
 is distinguishable because in that case, we observed that other than testimony by a police officer that the victim had told him when she had last been assaulted, “there was no testimony proving a specific occurrence of an incident provided by any witness.”  
Id
. at 775.  We stated that the general assertions made at trial failed to describe separate and distinct incidents.
(footnote: 9)  
Id
.  The State is bound to prove the occurrences of specific transactions, but not to prove specific dates.  
See Scoggan
, 799 S.W.2d at 680
 n.3; 
Wilson v. State
, 730 S.W.2d 438, 443 (Tex. App.—Fort Worth 1987, pet. ref’d), 
disapproved on other grounds by Curry v. State,
 861 S.W.2d 479, 482 n.2 (Tex. App.—Fort Worth 1993, pet. ref’d).

K.A.R. testified that although she could not remember specific dates, the sexual abuse would happen sometimes once or twice a week and once or twice a month at other times.  She testified that, approximately twenty times each, Appellant performed oral sex on her, had her masturbate him, made her give him oral sex, and put her hands on his penis.  She said that after the sexual abuse, Appellant would tell her that he loved her, hug her, and say he would never do it again.  She described the abuse as normally beginning with tickling, and then Appellant would undress her, and 

then he’d make me masturbate him and then give him oral sex.  And then if he ejaculated, then he would go into the bathroom and wash his hands, get it off his stomach.  And if he wasn’t done, then sometimes he’d come back and he’d play with my breasts and put his mouth on my vagina.

When asked whether Appellant forced her, she replied, “If putting your head down and not letting you get away is force, then yes, he did.”  When asked whether she made her outcry to hurt her mother, Teri, or because she was tired of being under Teri and Appellant’s authority, K.A.R. responded, “No, I was tired of being under his hands.”
(footnote: 10)
 K.A.R. described the conduct in counts I, III, and V as occurring in Appellant’s bedroom and in her bedroom when her mother was at work. Testimony by Teri and by DiAnna, who had been a neighbor and friend of the family at the time of the abuse, about Appellant’s admissions to them about the sexual abuse corroborates K.A.R.’s testimony.

DiAnna testified that in January 1998, Appellant came to her house to tell “his side of the story” and told her that he was sorry he did it, and he had been doing it for so long that he did not know how to stop.  Teri testified that Appellant specifically admitted to “touching [K.A.R.], kissing her, oral sex,” and admitted to having K.A.R. masturbate him.  When K.A.R. made her outcry to Teri, Teri asked K.A.R. to describe Appellant’s penis.  From the description K.A.R. gave, that it was “crooked,” or curved when erect,  Teri said that she knew K.A.R. was telling the truth.  Appellant’s wife, Kelly, described Appellant’s penis as having a “curvature abnormality, birth defect.”

Teri testified that when she told Appellant what K.A.R. said, “he told me that he knew at some point or another that she was going to tell me, and that he—every day when he came home from work, he was afraid that I was going to be waiting at the door with a baseball bat.”  She also testified that when Appellant moved back to Massachusetts, he continued to call her and that he wrote her letters for approximately two months following the confrontation, in which he specifically admitted the allegations.  These letters were not introduced at trial. 

Appellant testified on his own behalf, denying the allegations and that he had ever confessed to sexually abusing K.A.R.  He testified that at the time of K.A.R.’s outcry to Teri, K.A.R. was mad at both of them and had threatened to say that Appellant was touching her.  He testified that K.A.R. lied, that the prosecutors were out to get him, and that he never confessed to what Teri and DiAnna testified.

The remaining elements for all three counts, that K.A.R. be younger than fourteen years of age and not Appellant’s spouse at the time, were addressed early in the testimony.  K.A.R. testified that she was twelve when she made her outcry statement to her mother, and answered “no,” when asked if she had ever been married to Appellant or been his spouse.  Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of these three counts beyond a reasonable doubt.  Therefore, there was legally sufficient evidence to convict Appellant of counts I, III, and V.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693. 

Further, viewing this evidence in a neutral light and giving due deference to the jury’s determination, we conclude that the evidence supporting the conviction is not so weak that the jury’s determination is clearly wrong and manifestly unjust, and therefore it was factually sufficient to support Appellant’s convictions on counts I, III, and V. 
 Watson
, 2006 WL 2956272, at *8, 10; 
Johnson
, 23 S.W.3d at 8-9, 11.  We overrule Appellant’s second and third points. 

Counts II, IV, VI

Appellant contends that the evidence in support of counts II, IV, and VI could at best support only one of those incidents, but that the evidence is legally and factually insufficient on all of those counts. 

To convict Appellant of indecency with a child in counts II, IV, and VI, the State had the burden to prove that on three occasions, between September 1996 and January 1998, Appellant engaged in sexual contact with K.A.R. with the intent to arouse and gratify his sexual desire.  The specific sexual contact alleged for all three counts was that Appellant caused K.A.R. to touch his genitals.

K.A.R. testified that this conduct occurred “just about every time, so about twenty times.”  She described one particular incident in which Appellant made her masturbate him on the bed in his bedroom.  She testified that he called this the “volcano.”  She also testified that in addition to doing this in his bedroom, he also had her masturbate him in her bedroom.

The remaining elements for all three counts, that K.A.R. be younger than seventeen years of age and not Appellant’s spouse at the time, were established in K.A.R.’s testimony, as addressed above.  Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that indecency with a child occurred on three separate occasions and therefore, there was legally sufficient evidence to convict Appellant of counts II, IV, and VI.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693.  Further, viewing all the evidence in a neutral light, we conclude that the evidence presented was also factually sufficient to convict Appellant of all three counts of indecency with a child.  The jury chose to believe K.A.R.’s testimony over Appellant’s, and the evidence is not so weak that their determination was clearly wrong or manifestly unjust.  
See Watson
, 2006 WL 2956272, at *8, 10; 
Johnson
, 23 S.W.3d at 11.  We overrule Appellant’s sixth and seventh points. 

ADMISSION OF EVIDENCE

In his eighth, tenth, and eleventh points, Appellant complains that the trial court abused its discretion in the admission of evidence.

Standard Of Review

We review a trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  If the court’s decision falls outside the “zone of reasonable disagreement,” it has abused its discretion.  
Montgomery
, 810 S.W.2d at 391.  As long as the trial court’s ruling falls within the zone of reasonable disagreement, we will affirm its decision.  
Moses v. State
, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  The trial court’s decision must be reasonable in view of all the relevant facts.  
Santellan v. State
, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Manning v. State
, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Admissibility Of Evidence

Evidence is relevant when it has a tendency to make the existence of any fact more probable or less probable than it would have been without the evidence. 
Tex. R. Evid. 
401.  A trial court is afforded the discretion to decide the relevance and admissibility of evidence, and unless the court has abused that discretion by ruling on relevance arbitrarily or capriciously, the ruling will not be disturbed on appeal.  
Moreno v. State
, 858 S.W.2d 453, 463 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 966 (1993).

Flight

In point eight, Appellant claims the trial court abused its discretion by allowing the admission of testimony regarding Appellant’s alleged flight from Texas in 1998 as evidence indicating guilt, arguing that the prejudicial effect of this evidence outweighed its probative value.  The State responds that it was not an abuse of discretion to admit undisputed evidence of Appellant’s departure from Texas soon after K.A.R.’s outcry.  

Evidence of an accused person’s conduct after the commission of a crime that is indicative of a “consciousness of guilt” may be admitted as a circumstance tending to prove that the person committed the act with which he is charged. 
 See Hyde v. State
, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet. ref’d).
  Consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt.  
Id.
; 
see also Torres v. State
, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.).  Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn as long as it is first shown that it has some relevance to the offense under prosecution.  
Burks v. State
, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1114 (1995).  Appellant left Texas within three days of K.A.R.’s outcry. Testimony about when and how Appellant left Texas tended to show that it was more likely that he left in response to K.A.R.’s outcry than for some other reason; his departure also made the existence of some consciousness of guilt more probable.  Therefore, this evidence was relevant.  
Tex. R. Evid
. 401.

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is, among other things, substantially outweighed by the danger of unfair prejudice. 
 
Shuffield v. State
, 189 S.W.3d 782, 787 (Tex. Crim. App.), 
cert. denied,
 2006 WL 2462726 (U.S. Nov. 27, 2006) (No. 06-6055).  The trial court is in a superior position to gauge the impact of relevant evidence in evaluating its determination under rule 403.  
Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).  
Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.  
Shuffield
, 189 S.W.3d at 787.  A rule 403 analysis should include, but is not limited to, the following factors: how probative the evidence is; the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; the time the proponent needs to develop the evidence; and the proponent’s need for the evidence.  
Id
.  

Before trial, the court heard arguments on the admissibility of this evidence and stated that it would “allow the State to go into it,” but would also allow Appellant to impeach it.  Teri testified that the day after the outcry, Appellant took a duffle bag full of clothes with him but left behind his work-related tools, birth certificate, and clothing that did not fit in the duffle bag.  She testified that she went for a ride with him later that day and drove him to the airport for his flight to Massachusetts on the following morning.  Teri testified that Appellant apologized for what he had done to K.A.R. and wanted Teri to forgive him.  She testified that he also tried to convince her that K.A.R. had initiated all of the sexual behavior.

When asked why he did not pack more than a duffle bag, Appellant stated, “I didn’t own anything, you know what I mean.  Besides that, I had all intentions of coming back and doing everything, fixing everything, making everything all right.”  He admitted to leaving Texas three days after the accusation, and said “no,” when asked whether he thought it would have been a good idea to stick around for any investigation after the outcry.

This evidence is probative of Appellant’s state of mind after the outcry, and it had little potential to impress the jury in some irrational, indelible way.  Although Appellant testified that he intended to return, he did not, and he gave no other reason for leaving.  He acknowledged that he left his maintenance job at a private school when he went to Massachusetts because he knew that he would not be able to work there with sexual abuse allegations against him. Thus, the trial court did not abuse its discretion by concluding that the probative value of Teri’s testimony about Appellant’s departure was not substantially outweighed by the danger of unfair prejudice.  
See Shuffield
, 189 S.W.3d at 787-88.  Appellant’s eighth point is overruled.

State’s Exhibit 1

In points ten and eleven, Appellant complains that it was error for the trial court to admit State’s Exhibit 1 over his objection because the exhibit was not relevant and not properly authenticated.  State’s Exhibit 1 consisted of three letters and an attachment, file marked June 26, 2000.

Preservation Of Error

At the time the State offered Exhibit 1, Appellant made no objection based on relevance.  Appellant only objected based on “unfairness” and lack of authentication.  Therefore, Appellant has forfeited this complaint for failure to comply with rule 33.1(a).  
See
 
Tex. R. App. P. 
33.1(a); 
Mendez
, 138 S.W.3d at 341-42.  Because Appellant failed to preserve his objection, we overrule Appellant’s tenth point.

Authentication

Texas Rule of Evidence 901(a) provides that “[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”  
Tex. R. Evid
. 901(a); 
Massimo v. State
, 144 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, no pet.).  Examples of authentication or identification meeting rule 901‘s requirements include testimony of a witness with knowledge that a matter is what it is claimed to be and distinctive characteristics such as “[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.”  
Tex. R. Evid
. 901(b)(1), (4).  

Appellant testified that he recalled writing a letter in 2000 to the court,  in which he asked for information.  He stated, “I recall sending one letter to the court, asking the court, it’s been six months, please help me, what’s going on in here, when am I going to court.”

The first letter in the exhibit, signed “Tom. E. Horton,” was dated June 6, 2000, was addressed to the court, and referenced Appellant’s trial court cause number, “F-98-0597-B.”
(footnote: 11)
 In the sixth paragraph of Letter 1, Appellant states, “Please find enclosed copies of two letters which were sent to Mr. Perritt on April 14, 2000, and May 26, 2000.  These, along with attempt to reach him by phone, have gone unanswered.”  Letter 2 is dated May 26, 2000.  Letter 3 is dated April 14, 2000.  Both letters were addressed to Ricky Perritt,  Appellant’s second attorney on this case.  On his review of the letters in Exhibit 1, Appellant stated “that second one is not mine.  The first one is mine,” and “the third one, I’m not sure of.”  Testifying as a witness with knowledge that a matter is what it is claimed to be, Appellant sufficiently authenticated Letter 1.  
See
 
Tex. R. Evid
. 901(a), (b)(1).

A review of the characteristic evidence and circumstances concerning Letters 2 and 3 yields the following: (1) the dates on these two letters and their purpose, to reach Perritt and prepare Appellant’s defense, are referenced in Letter 1; (2) Appellant testified that Ricky Perritt was his former attorney; (3) Appellant identified the return address in Letters 2 and 3 as his address; (4) in the court’s file was the original envelope from the Denton County jail, labeled inmate mail, addressed to the trial judge, and with Appellant’s return address; (5) Letter 2 references an attachment listing names of people Appellant testified that he knew; (6) Letters 2 and 3 do not have a handwritten signature, but are concluded with a typewritten “Tom E. Horton.”

The trial judge concluded that Appellant’s testimony that he did not write the unsigned Letters 2 and 3 went to the evidence’s weight, not its admissibility, and decided to admit the exhibit and “let the jury decide what to do with it.”  Based on the foregoing and upon review of the requirements of Rule 901 of the Texas Rules of Evidence, we cannot say that the trial court’s decision to admit State’s Exhibit 1 over Appellant’s lack-of-authentication objection was arbitrary or unreasonable.  
See Massimo
, 144 S.W.3d at 216.  Therefore, we hold that the trial court’s decision did not constitute an abuse of discretion and we overrule Appellant’s eleventh point.

MOTION FOR MISTRIAL

In his ninth point, Appellant asserts that the trial court erroneously denied his twice-requested motion for mistrial when testimony referring to previous extraneous acts between K.A.R. and Appellant was improperly put before the jury.

Before trial, the court granted Appellant’s motion in limine to exclude testimony about a previous trial involving Appellant in Massachusetts on a similar accusation and any acts alleged to have occurred between K.A.R. and Appellant prior to the move to Texas.  The extraneous acts at issue were mentioned in K.A.R.’s testimony that the abuse began when she was eight and Teri’s testimony that Appellant tried to convince her “that at eight years old [K.A.R.] knew what she was doing—.”

Standard Of Review

Mistrials are an extreme remedy for prejudicial events occurring during the trial process.  
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996); 
Jackson v. State
, 50 S.W.3d 579, 588 (Tex. App.—Fort Worth 2001, pet. ref’d).  The declaration of a mistrial ought to be an exceedingly uncommon remedy for residual prejudice remaining after objections are sustained and curative instructions are given. 
 Bauder
, 921 S.W.2d at 698.  For this reason, judicial admonishments to the jury are presumed effective.  
Id
.

When the trial court sustains an objection and instructs the jury to disregard but denies a motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
Primes v. State
, 154 S.W.3d 813, 814 (Tex. App.—Fort Worth 2004, no pet.).  Its resolution depends on whether the trial court’s instruction to disregard cured any prejudicial effect.  
West v. State
, 121 S.W.3d 95, 107 (Tex. App.—Fort Worth 2003, pet. ref’d).  Determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case.  
Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).

Preservation Of Error

After Appellant objected to Teri’s statement, any further discussion with the court was made off the record.  To preserve a complaint for appellate review, the record must reflect that the complaint was made to the trial court and either that the trial court ruled on it or that the appellant objected to its refusal to do so.  
Tex. R. Evid. 
103(a); 
Tex. R. App. P
. 33.1(a)(2); 
Gutierrez v. State
, 36 S.W.3d 509, 510-11 (Tex. Crim. App. 2001); 
Darty v. State
, 709 S.W.2d 652, 655 (Tex. Crim. App. 1986).  While a trial court’s ruling may be implied under rule 33.1(a)(2), we do not find any indication of whether Appellant moved for a mistrial in response to the court overruling his objection.  
See 
Tex.

R. App. P
. 33.1(a)(2).  Therefore, because his complaint about Teri’s comment was not properly preserved, we will not address it further.
(footnote: 12)  
See id
. 

Instruction To Disregard

Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses. 
Ovalle v. State
, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).  Error in admitting improper testimony may be corrected by a withdrawal and an instruction to disregard unless it appears the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.  
Barnes v. State
, 876 S.W.2d 316, 326-27 (Tex. Crim. App. 1994); 
Waldo v. State
, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988). 

Here, the question asked by the State to K.A.R. was not improper:

Q: Did something bad happen between you and [Appellant] after you moved to Denton?

A: Yes.

Q: And when did it start?

A: It started when I was eight.

Q: When did it start in relation to you moving to Denton?

A: Probably within like a month of living there.

At this point, Appellant’s counsel requested permission to approach the bench and moved for a mistrial.  The trial judge denied Appellant’s motion, but gave the jury an instruction to disregard the answer and to consider it for no purpose.  
Because the State clarified K.A.R.’s statement about her age immediately, returning the focus to the abuse in Texas, we cannot conclude that her statement about her age was “so prejudicial that expenditure of further time and expense would be wasteful and futile.”  
See Hawkins
, 135 S.W.3d at 77.  Therefore, we conclude that the court’s instruction cured the error.  
See Ladd
, 3 S.W.3d at 567;
 Bauder
, 921 S.W.2d at 698.  Accordingly, we hold that the trial court did not abuse its discretion by denying Appellant’s motion for mistrial.  
See Hawkins
, 135 S.W.3d at 77.  
We overrule Appellant’s ninth point.

CONCLUSION

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL A:  LIVINGSTON, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  December 7, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
At least one notice about the 2000 trial had been sent to Appellant at a Massachusetts address, with his attorney receiving a copy.  Appellant’s current spouse, Kelly, testified that Appellant told her about the sexual abuse charges pending in Texas and that they knew about his 2000 court date, but that his attorney told them Appellant did not have to attend because he was in Massachusetts.  Appellant testified that he never knew he “was going to trial up until right now.”

3:
Counts I and III differed only by date, stating that Appellant “on or about the [date] and anterior to the presentment of this Indictment, . . . did then and there intentionally and knowingly cause the mouth of said [K.A.R.], a child younger than 14 years of age who was not the spouse of said [Appellant], to contact the sexual organ of [Appellant].”

4:
Count V stated that Appellant “on or about the 1st day of November, 1997, and anterior to the presentment of this indictment, . . . did then and there intentionally and knowingly cause [Appellant’s] mouth to contact the female sexual organ of [K.A.R.], a child younger than 14 years of age who was not the spouse of said [Appellant].”

5:
Section 22.021(a)(1)(B)(v) states, “a person commits an offense if the person intentionally or knowingly causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.”  
Tex. Pen. Code Ann. 
§ 22.021(a)(1)(B)(v) (Vernon Supp. 2006).  Subsection (v) became effective September 1, 1997.  
See
 Act of May 28, 1997, 75th
 Leg., R.S., ch. 1286, § 2, 1997 Tex. Gen. Laws 4911, 4912.

6:
An 
ex post facto
 law is an enactment that punishes as a crime an act previously committed, which was innocent when done.  
Ex parte Scales
, 853 S.W.2d 586, 588 (Tex. Crim. App. 1993)
.

7:
Appellant did not raise this issue at trial.  Generally, constitutional errors are forfeited by failure to object at trial.  
Curry v. State
, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); 
accord Mendez v. State
, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).  But “the constitutional prohibition against 
ex post facto 
legislation . . . is a categorical prohibition directed by the people to their government” which cannot be waived, individually or collectively.  
Ieppert
, 908 S.W.2d at 220.  Because the 
ex post facto 
clause is a fundamental systemic requirement that may not be waived by failure to object at trial, Appellant may raise it for the first time on appeal.  
Saldano v. State
, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002); 
Ieppert
, 908 S.W.2d at 218, 220.

8:
That is, from September 1, 1997 to the outcry in January 1998.  The indictment was presented on May 28, 1998.

9:
In 
Klein
, the testimony indicated how long the alleged abuse had occurred, that the child had reported that the alleged abuse occurred more than once, that the abuse happened “most nights” when the child’s mother was at dance class, which she attended for six to eight weeks when the child was a student at McCoy Elementary, and when the child transferred to that school.  
Id
. 

10:
K.A.R. testified that the trigger for telling her mother about the sexual abuse was being punished, but also “[b]ecause I couldn’t take it anymore and because they were going to get married and I didn’t want them to get married before I told her, and I was sick of feeling dirty and I wanted it to stop.”

11:
For clarity, we will refer to “Letter 1” for the letter dated June 6, 2000, “Letter 2” for the letter dated May 26, 2000, and “Letter 3” for the letter dated April 14, 2000.

12:
Appellant argues that “while the specifics of the objection were not recorded, it is obvious from a later objection after the conclusion of [Teri’s] testimony and motion for mistrial what the specifics of that objection must have been.”  We decline Appellant’s invitation to engage in speculation.  The motion for mistrial made at the conclusion of Teri’s testimony was based on Appellant’s objection to the State’s reference to “defense’s motion in limine” in front of the jury, not to Teri’s testimony.  The trial court denied that request for mistrial.