LEN CAGLE V. THE STATE.

No. 1513. Decided March 23, 1898.

**1. Passing Forged Instrument—Indictment.**

An indictment for passing a forged instrument sufficiently alleged its forgery by averring that defendant "did wilfully, knowingly, and fraudulently pass as true to one F. a forged instrument in writing to the tenor following," and then setting out the instrument.

**2. An Incomplete Instrument the Subject of Forgery, When—Difference Between Innuendo and Extrinsic Averments.**

The office of an innuendo pleading in forgery is simply to explain or make clear the use of words or terms in an instrument. Extrinsic averments are such additional averments as show a writing otherwise incomplete to be such as in connection with other allegations is an instrument which will create, increase, diminish, discharge, or defeat a pecuniary obligation, and such an instrument may, by the use of such extrinsic averments, be the basis of forgery. But if it is of such a character as that extrinsic averments can not help it at all it can not become the basis of forgery. An instrument whose meaning is not clear may sometimes require both an innuendo and extrinsic averments to give point to it.

**3. Same—Extrinsic Facts to Be Averred, When.**

In forgery, if the paper declared on be not one of the ordinary instruments used in commercial transactions, but is contractual in form, and depends on extrinsic facts to create a liability, then such extrinsic facts must be averred in the indictment.

**4. Same—Release of Landlord's Lien—Indictment Insufficient.**

On a trial for passing a forged instrument which appeared to be a release to one F. of a landlord's lien against a tenant (the defendant) on the first six bales of cotton to be grown by the tenant on fifty acres of land, Held, that to be sufficient it was essential that the indictment should have alleged, by extrinsic averments, the relations of the parties so as to make it appear that the release of the landlord was the release of an existing contractual lien for rents against the defendant.

**5. Same—When an Instrument Is the Subject of Forgery,**

To authorize an indictment for forgery, the instrument must either appear on its face to be, or be in fact, one which, if true, would possess some legal validity; or, in other words, must be legally capable of effecting a fraud, and the indictment must set out such extrinsic facts where the instrument is incomplete in form as will enable the court to see that, if it were genuine, it would be valid.

**6. Same—Lien Upon an Unplanted Crop.** '

On a trial for passing a forged instrument, where the instrument was the release of a landlord's lien upon an unplanted crop, Held, such instrument was the subject

of forgery, since, under our law, it is competent for a landlord to hold a lien on a crop not planted, the lien to attach whenever the crop is in esse.

APPEAL from the District Court of Navarro. Tried below before Hon. L. B. COBB.

Appeal from a conviction for passing a forged instrument; penalty, two years imprisonment in the penitentiary.

The indictment is set out in the opinion. A motion was made to quash upon the grounds, first, said indictment does not sufficiently allege or show that the instrument charged to have been passed was forged; second, it fails to appropriately and sufficiently charge that said instrument was a forged instrument, the allegation that it was such being merely a conclusion. It fails to show how and in what manner Fred Fleming, to whom it is alleged said instrument was passed, could have been defrauded.

No further statement required.

*Stone & Lee,* for appellant.—The court erred in overruling the motion to quash the indictment in this cause made on the ground that said indictment does not sufficiently allege or show the instrument charged to have been passed was a forged instrument; the allegation that it was such being merely a conclusion of the pleader. And on the further ground that said indictment fails to show how or in what manner he, to whom it is alleged said instrument was passed, was, or could have been defrauded, there being no allegation that he parted with, or agreed to part with, anything of value in consideration of said instrument. Wilburn v. State, 41 Texas, 238; State v. Williams, 41 Texas, 100, 101; Reed v. State, 14 Texas Crim. App., 662; Taylor v. State, 23 Texas Crim. App., 639; Williams v. State, 13 Texas Crim. App., 285; State v. Perkins, 45 Texas, 10; People v. Marion, 28 Mich., 255.

Everything which it is necessary to prove should be stated in an indictment. It was necessary in this case to prove that the instrument set out was a forged instrument; that is, that it was a false instrument; that it purported to be the act of M. A. Swink; that it was made without lawful authority from M. A. Swink; and that it would, if true, have diminished, discharged, or defeated some pecuniary obligation held by or owing to said Swink, or have transferred or in some manner have affected her property, and that it was made with intent to injure or defraud. Therefore it is essential that these facts should be stated in the indictment. Code Crim. Proc., art. 421.

It should show that she had a lien; that cotton was raised by defendant on her farm. Dixon v. State, 81 Ala., 61; People v. Wright, 9 Wend., 193; State v. Humphreys, 10 Humph. (Tenn.), 442; Henry v. State, 35 Ohio St., 128; 54 Am. Rep., 46.

The date of release is February 25th. It should show existence of the cotton. Where the instrument set out is not per se the subject of forgery, that is, where it does not affirmatively appear from inspection of it that,

if true, it would create, increase, diminish, discharge, or defeat a pecuniary obligation, or would transfer or in some manner affect some property, the indictment should contain words of explanation and application, showing that such would be the effect of the instrument if true. So, in this case, it not appearing affirmatively from an inspection of the instrument that M. A. Swink owned any land, nor that Len Cagle owed her anything, nor that he was her tenant, nor any relation or fact existed whereby she would acquire any interest in or lien on defendant's crop, nor that he had a crop, it does not appear that said instrument would, if true, have diminished, discharged or defeated any pecuniary obligation, nor that it would have transferred .or in any manner affected her property. Therefore the indictment should have contained these or like allegations, or that he subsequently grew cotton, to which the lien attached. 1 Whart. Crim. Law, 9 ed., sec. 743; Dixon's Case, 81 Ala., 61; State v. Humphreys, 10 Humph. (Tenn.), 442; State v. Martin, 9 Id., 55; Shannon v. State, 109 Ind., 407; People v. Wright, 9 Wend., 193; Com. v. Hinds, 101 Mass., 209; 54 Am. Rep., 46; 55 Am. Rep., 647.

The intent to defraud is the gist of the offense. Where the allegation is that the instrument was passed as true to another with intent to defraud him, the indictment should allege that he parted with or agreed to part with some valuable consideration therefor, or that the passing of the instrument to him might have operated or did operate to injure and defraud him. Com. v. Williams, 13 Bush. (Ky.), 267.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of uttering a forged instrument in writing, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Appellant made a motion to quash the indictment, which was overruled, and he assigns this action of the court as error. The charging part of the indictment is as follows: That Len Cagle, "did willfully, knowingly, and fraudulently pass as true to Fred Fleming a forged instrument in writing to the tenor following: 'Office of Fred Fleming. Corsicana, Texas, Feb. 18th, 1895. Know all men by these. presents, that I hereby release my landlord's lien in favor of Fred Fleming on 1st 6 bales of cotton of the crop of Len Cagle to be grown on 50 acres of my farm, part of the —————— survey, in the year 1895, situated 15 miles S. from Corsicana, Navarro Co., Texas. A. M. Swink,'—which said instrument in writing the said Len Cagle then and there knew to be forged, .and did then and there so pass the same as true, with intent to injure and defraud Fred Fleming," etc. The grounds alleged in the motion to quash were: Because it is not distinctly alleged that said instrument was a forged instrument, and because it fails to show how or in what manner Fred Fleming, to whom it is alleged said instrument was passed, could have been defrauded. In our opinion, the first of these grounds

is not well taken. Appellant's second proposition involves the question whether or not the instrument on its face, without any extrinsic averments, imports a pecuniary obligation. Our Statute (Penal Code 1895, article 530) on this subject reads as follows: "He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever." This statute is comprehensive in its terms, and is unlike the statutes of some of the other States which name particular kinds of instruments. Some diversity of opinion has existed both at common law and under statutes as to whether certain instruments—as money orders—were such on their face as to be the basis of an accusation for forgery without any extrinsic averments. A promissory note, an order for money or goods, a check or draft, where such instruments are plain on their face, it is universally held require no extrinsic averments, as they need no explanation, and show without explanation a pecuniary obligation. But sometimes, where the instrument is not clear on its face, or is ambiguous in its terms, explanatory averments are required. Various illustrations are given on this subject in Bishop on Statutory Crimes, secs. 329, 330. Our own court follows the authorities, which give a liberal interpretation in construing these instruments; and our decisions hold that on an order for money or goods, where the instrument can by reasonable intendment be construed as an order on its face, it is not necessary to use extrinsic averments either to show the relation between the parties or any authority to draw the order. See Hendricks v. State, 26 Texas Crim. App., 176. On the other hand, where the instrument does not clearly import a pecuniary obligation, but requires extrinsic proof in order to show that it is such, it is held that the extrinsic averments must be made. See King v. State, 27 Texas Crim. App., 567; Simms v. State, 32 Texas Crim. Rep., 277; Womble v. State, ante, p. 24; Daud v. State, 34 Texas Crim. Rep., 460. Some confusion may have arisen as to the character of pleading in which these extrinsic averments must be made. In some of the cases they are called innuendo averments. But this is not accurate, for an innuendo averment can not enlarge or point out the effect of language beyond its natural and common meaning in its usual acceptation, it being intended merely to explain or make clear the use of terms in the paper itself; while extrinsic averments are such additional allegations as show a writing, otherwise incomplete, to be such as, in connection with other allegations, is an instrument which will create, increase, diminish, discharge, or defeat a pecuniary obligation. An instrument which is invalid in its terms—that is, does not in any manner create, increase, diminish, discharge, or defeat a pecuniary obligation—may, by the use of extrinsic averments, be the basis of forgery. But if it is of such a character as that extrinsic averments will not help it at all, then it will not be the basis

of forgery. "It is a general rule that any writing of such form as to be the means of defrauding another may be the subject of forgery, or alteration in the nature of forgery. But such instrument, to be the subject of indictment for forgery, must be valid, if genuine, for the purposes intended, or, if void, or invalid on its face, and it can not be made good by averment, the crime of forgery can not be predicated upon it. The general rule that the false making of an instrument void on its face is not forgery has the limitation that, where the instrument does not appear to have any legal validity, or show that another might have been injured by it, but that extrinsic facts existed by which the holder of the paper might be able to defraud another, then the offense is complete, and an indictment averring the existence of the extrinsic facts will be supported." See 8 Am. and Eng. Enc. of Law, pp. 478, 479. It may be considered a safe test, if the instrument is such on its face that it imports an obligation in regard to money or property, and will afford the basis of a civil action without resorting to extrinsic testimony, then a charge of forgery can be based thereon without any extrinsic averments. If the instrument is not of that character, but by the aid of extrinsic averments does create an obligation or liability with reference to money or property, then, by the aid of such extrinsic averments, it can be made the subject of forgery. Under this rule it is apparent that a promissory note, a check, draft, or order for money, plain and unambiguous in its terms, is the subject of forgery without any extrinsic averments. If the meaning of the paper itself is not clear, but of doubtful import, then it may be given point by an innuendo, and in such case no extrinsic averment would be necessary, or, it may require both. If, however, the paper is not one of the ordinary instruments used in commercial transactions, but is contractual in form, and depends on extrinsic facts to create a liability, then it would appear that such extrinsic facts must be averred in the indictment.

Now, the instrument in question, as shown by the evidence, appears to be a release by Mrs. A. M. Swink of her landlord's lien as against Len Cagle, her tenant, on fifty acres of land in favor of one Fred Fleming, who, on the faith of such release of the lien on six bales of cotton to be grown on said fifty acres of land, paid to said Cagle $186. All these facts, it appears, had to be proven; that is, the transaction had to be made manifest to the jury by evidence of the relation of the parties, and how the contract came to be made, the consideration therefor, etc. This, we take it, had to be done in order to show that, if the instrument had been true, it created, or, more accurately speaking, discharged to that extent, or transferred to that extent, a pecuniary obligation. If Mrs. Swink had not been the landlord or lessor of Len Cagle, and no relation of that sort existed between them, then the execution of the instrument in her name, if it had been her genuine act, would not have released any existing obligation. So, in the nature of things, it was necessary for the State to prove the relation of landlord and tenant between Cagle and Mrs. Swink,

39th Crim. Rep.—8

before there could exist the basis of a forgery of a release by her of the
landlord's lien in favor of Fleming. And what is necessary to be proven
under our system of procedure must be alleged. See Code Crim. Proc.
1895, art. 440. We accordingly hold that the indictment was defective,
because it did not, by extrinsic averments, show the relation of the parties
so as to make it appear that the release of Mrs. Swink was the release
of an existing contractual lien for rents against Len Cagle. See Dixon
v. State, 81 Ala., 61, 1 So. Rep., 69; State v. Humphreys, 10 Humph.,
442; State v. Martin, 9 Humph., 55; Shannon v. State, 109 Ind., 407,
10 N. E. Rep., 87; People v. Wright, 9 Wend., 193; Com. v. Hinds, 101
Mass., 209. Dixon's Case, supra, was much like this case; the instru-
ment declared on being the relinquishment of a landlord's lien. The in-
strument was set out without any extrinsic averments. We quote from
the opinion of the court as follows: "The instrument or paper, the sub-
ject of the forgery charged in this case, does not, by anything it asserts,
indicate that Roberts, whose name is alleged to have been forged, had any
interest whatever in the 'patch cotton' mentioned therein. Hence, on the
face of the instrument, it does not appear that any right or interest in
property is or purports to be affected. To authorize an indictment for
forgery, 'the instrument must either appear on its face to be, or be in fact,
one which, if true, would possess some legal validity; or, in other words,
must be legally capable of effecting a fraud.' There being nothing in the
paper, as we have shown, to indicate that Roberts was in any way con-
nected in interest with the 'patch cotton,' it required the averment of an
extrinsic fact—the fact that he was landlord having an interest or lien—
to show that his property interest was or would be affected. 'If a writing
is so incomplete in form as to leave an apparent uncertainty in law
whether it is valid or not, a simple charge of forging it fraudulently, etc.,
does not show an offense; but the indictment must set out such extrinsic
facts as will enable the court to see that, if it were genuine, it would be
valid.' 2 Bish. Crim. Law, 7 ed., sec. 545; State v. Humphreys, 10
Humph., 442." The contention that the indictment should have alleged
that the cotton was then growing, we do not believe is well taken. In
other words, we hold that it was perfectly competent for the landlord to
take a lien on the crop on the rental of the premises, and before any crop
was planted, and the lien will attach whenever the crop is in esse. The
statute creates such lien, and we believe it is competent for the landlord
to transfer or release such lien.

It is not necessary to discuss the other questions raised; but, because
the indictment is defective, the judgment is reversed and the prosecution
ordered dismissed.

*Reversed and ordered dismissed.*