EDWARD L. MITCHELL V. STATE.

No. 30,856. November 4, 1959.
Motion for Rehearing Overruled December 2, 1959.
Second Motion for Rehearing Overruled January 13, 1960.

*Seymour Lieberman,* Houston, for appellant.

*Dan Walton,* District Attorney, *Howell E. Stone,* Assistant District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is passing as true a forged instrument in writing; the punishment two years.

The sole ground for reversal relates to the sufficiency of the indictment, the contention being that the trial court erred in overruling the defendant's motion to quash; motion for instructed verdict, and motion for new trial.

Appellant's position is that the instrument set out in the indictment without explanatory averments is insufficient to constitute forgery, hence could not support the count of the indictment predicated upon its passing.

The instrument alleged to be forged is a conditional sales contract and reads:

### "CONDITIONAL SALES AGREEMENT

"This agreement, made and entered into by and between Edward L. Mitchell dba Washmobile Company of Texas of Houston, Harris County, Texas hereinafter referred to as Washmobile Company and Charles I. Tweedel, Jr. of Port Arthur (City) Jefferson County, Texas State, hereinafter referred to as Purchaser.

## "WITNESSETH:

"The Purchaser hereby orders from Washmobile Company and does hereby purchase one complete automatic car wash laundry more specifically described as follows:

"1 - 2—30 H.P. Dryer.
"1 - 2½ H.P. conveyor — 100 Ft. — 15 hooks
"1 - pre-rinse
"1 - Final rinse
"1 - Auto — side brushes — nylon
"1 - Auto — Top      "         "
"2 - 230 Auto — Steam cleaners
"1 - 5 H.P. Vacuum, with all accs.
"1 - Auto. Wheel Washer

for a total consideration of the sum of $18,395.00 to be payable in cash at the time of completion of installation of said equipment.

"The said Washmobile Company does hereby agree to sell the aforementioned equipment for the consideration set out above F.O.B. either Chicago or California (all freight charges to destination to be borne by Purchaser) and further agrees to erect and install said equipment in proper operating condition to the electrical outlets and plumbing connections specifically installed at the premises designated by Washmobile Company on the premises in accordance with the plans and specifications for the building to be furnished by the Purchaser. In the event the plans and specifications furnished by the Purchaser make it impractical to make such connections to utilities referred to above, the Washmobile Company shall have the option either to require said plans and specifications changed accordingly or to make such corrections as necessary in the physical premises and charge the purchaser for the additional material and labor required thereby.

"Purchaser hereby deposits the sum of $2,395.00 as down payment on said equipment and does hereby agree to pay the balance of $16,000.00 at the time of completion of said installation. The completion of said installation shall be contigent, of course, upon its proper functioning for a period of twenty-four (24) hours in test run.

"The Purchaser shall, within a period of 30 days after the execution of this agreement, furnish to Washmobile Company

a suitable location under proper lease or ownership suitably prepared with all foundation, drive-way and utility work complete to permit said equipment installation. In the event the Washmobile Company is prevented, for any reason outside of their own fault or control, to install said equipment within 60 days thereafter the Washmobile Company may, at its option, declare a forfeiture of downpayment and keep said sums as liquidated damages and expense.

"Washmobile Company agrees that said equipment shall be new in first class condition properly installed and in proper working condition. Washmobile Company further agrees that such installation shall be complete within 30-60 days after the premises are ready.

"It is specifically understood and agreed that time is the essence of this contract. It is further agreed that the Purchaser will pay all freight charges of the public carrier for delivering equipment from Chicago or California as previously referred to and that in the event the premises are not suitable for the storage of the equipment upon its arrival that the Purchaser shall be responsible for storage charges in a proper and safe place. In the event the Purchaser fails to make arrangement for proper storage, Washmobile Company shall have the option of making such arrangements and charging Purchaser for the cost thereof.

"It is specifically understood and agreed between the parties that Washmobile Company retains a lien on said equipment until the full completion of this contract including any additional proper charges having been paid to Washmobile Company by the Purchaser.

"It is agreed that this contract shall not be cancellable after execution hereof and that is constitutes a binding and specific agreement.

"The Washmobile Company reserves the right to assign this contract or the proceeds therefrom.

"Washmobile Company further agrees that the equipment properly installed and functioning will be delivered to the Purchaser free of any lien or obligation of any nature.

"IN WITNESS WHEREOF we hereby set our hands this the 8th day of March A.D., 1955.

"WASHMOBILE COMPANY OF TEXAS

"By Edw. L. Mitchell

"Edward L. Mitchell

"Proprietor

WITNESSES:

_____                "PURCHASER

_____                "Charles I. Tweedel, Jr.

_____                    "OWNER"

_____

Appellant cites Cagle v. State, 39 Texas Cr. Rep. 109, 44 S.W. 1097, and relies especially upon the following quotation therefrom:

"If, however, the paper is not one of the ordinary instruments used in commercial transactions, but is contractual in form, and depends on extrinsic facts to create a liability, then it would appear that such extrinsic facts must be averred in the indictment."

The conditional sales contract set out in the indictment, on its face, clearly imports an obligation on the part of the Purchaser Tweedel to buy the equipment therein described for a total consideration of $18,395.00 and to pay a purported balance of $16,000.00 upon the other party's performing his obligations under the contract; to pay the freight charges on the property, and to pay storage charges, to say nothing of the obligation appellant agreed to perform.

The instrument shows that the seller reserved a lien upon the equipment and the right to assign the contract or the proceeds therefrom.

Had Charles I. Tweedel, Jr. signed the instrument set out in the indictment, no allegation other than such as showed its

execution and the manner of its breach would have been necessary for recovery in a civil proceeding against him.

The Cagle case does not support appellant's attack upon the indictment herein.

In the Cagle case the missing allegation did not relate to the default which might occasion the enforcement of the lien, but to omitted allegations necessary to establish that the landlord's lien, which the instrument purported to release, existed.

In the case before us, the pecuniary obligation of the purported purchaser fully appears in the instrument set out in the indictment and no explanatory averments were necessary. Chimene v. State, 133 Texas Cr. Rep. 43, 106 S.W. 2d 692.

Appellant puts much emphasis upon the fact that the instrument was dated March 8, 1955 whereas the indictment alleged it was passed on or about June 14, 1956.

The state is not bound by the date on or about which the indictment alleges an offense to have been committed. See cases listed in 1 Branch's Ann. P.C. 2d, Sec. 459, p. 457.

It follows that the date shown on the instrument alleged to have been forged could not affect the sufficiency of the indictment.

The evidence clearly shows that the name Charles I. Tweedel, Jr., the purported purchaser, was forged, and that no such contract had in fact been entered into; that appellant passed the forged contract to Robert S. Durno and in connection therewith delivered to Mr. Durno a bill of sale to the equipment therein described.

Appellant received from Mr. Durno in this transaction $9,000.00, $6,000.00 of which was contributed by Mrs. Stevens and $3,000.00 by Mr. Durno.

Appellant afterward confessed to Mr. Durno that the signature of Tweedel was forged, as were the buyer's signature to similar contracts he had passed by which appellant had extracted from Mr. Durno and his friends some $33,000.00.

We find the evidence and the indictment sufficient to sustain the conviction.

The judgment is affirmed.

ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

In our original opinion we said: "Appellant puts much emphasis upon the fact that the instrument was dated March 8, 1955 whereas the indictment alleges it was passed on or about June 14, 1956." On rehearing he asserts that on June 14, 1956, this contract would not enable its holder, had it been true, to have maintained a civil suit thereon without alleging additional facts because by its terms it was to have been performed and all obligations thereunder ceased long prior to June 14, 1956. He further asserts that on such date *because of the passage of time* the contract would not have sufficient apparent validity to defraud a person of ordinary prudence, that is, it was a past due instrument as defined by the Negotiable Instruments Act.

Reliance is now had upon Hickman v. State, 44 Texas Cr. Rep. 533, 72 S.W. 587, which was followed in Donald v. State, 165 Texas Cr. Rep. 252, 306 S.W. 2d 360, and which holds that where the indictment shows on its face that it is barred by the statute of limitations, it is essential that the pleader incorporate therein extrinsic allegations to show that it is not in fact so barred.

This contract does not show on its face that it was barred by the statute of limitations and therefore Hickman is not authority here.

We quote from 19 Texas Juris., sec. 24, p. 840: "In addition to the requisites heretofore mentioned, a writing, in order to be the subject of forgery, must ordinarily have sufficient apparent validity to defraud a person of ordinary prudence—although a superficial validity is all that is required."

The instrument in question here certainly purported a pecuniary obligation and had more than superficial validity.

We are at a loss to know what extrinsic allegations could have been made that would not themselves have been false. Certainly the state could not allege that the parties to the contract had mutually extended the time of performance since this was a forgery in the beginning and no contract had been entered into.

Remaining convinced that we properly decided this case originally, appellant's motion for rehearing is overruled.